**ABRAMSON & DENENBERG, P.C.**
BY: ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NUMBER: 54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107                    **ATTORNEY FOR PLAINTIFF**
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANGELIQUE YONKAUSKE**<br>304 MISTLETOE AVENUE<br>MARMORA, NJ 08223<br>         v. | **CIVIL ACTION** |
| **LEHIGH GORGE SCENIC RAILWAY**<br>1 SUSQUEHANNA STREET<br>JIM THORPE, PA 18229 | **JURY TRIAL DEMANDED** |
| **READING, BLUE MOUNTAIN &**<br>**NORTHERN RAILROAD COMPANY**<br>1 RAILROAD BOULEVARD<br>PORT CLINTON, PA 19549 | |
| **KAITLYN BECHLER FETTEROLF**<br>**READING, BLUE MOUNTAIN &**<br>**NORTHERN RAILROAD COMPANY**<br>1 RAILROAD BOULEVARD<br>PORT CLINTON, PA 19549 | |
| **JOHN & JANE DOES #1-10 and**<br>**XYX CORPS. #1-10 (Fictitious names)** | |

_____

## I.   INTRODUCTION

1.   Plaintiff Angelique Yonkauske brings this action for damages for Negligence; Negligent Hiring, Supervision, Training & Retention; Sexual Assault and Battery; and Intentional Infliction of Emotional Distress against Defendants Reading, Blue Mountain & Northern Railroad Company, Lehigh Gorge Scenic Railway, and Kaitlyn Bechler Fetterolf.

## II.   JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the cause of action upon which the Complaint is based arose in Carbon County, Pennsylvania, which is in the Middle District of Pennsylvania.

### III.  PARTIES

4. Plaintiff, Angelique Yonkauske, is an adult individual, with a residence in Cape May County, in the State of New Jersey, with a mailing address located as captioned.

5. Defendant Reading, Blue Mountain & Northern Railroad Company ("RBMNRR") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an office located as captioned. Defendant RBMNRR is owned and operated by Andy M. Muller, Jr.

6. Defendant, Lehigh Gorge Scenic Railway, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an office located as captioned. Upon information and belief, Defendant Lehigh Gorge Scenic Railway is owned and operated by Defendant Reading, Blue Mountain & Northern Railroad Company and hosts train rides to individuals in Jim Thorpe, Pennsylvania.

7. Hereinafter, Defendants Lehigh Gorge Scenic Railway and RBMNRR, are referred to as "the Railway Defendants".

8. Defendant, Kaitlyn Bechler Fetterolf (hereinafter referred to as "Fetterolf"), at all times relevant herein, was an adult individual who was and remains employed by the Railway Defendants.  Upon information and belief, Defendant Fetterolf was a fairly a new hire (July 2022) of the Railway Defendants at the time of the incident described herein.

9. At all times relevant hereto, Defendants John & Jane Does #1-10 and XYZ Corps #1-10, named herein acted and/or failed to act due through their officers, directors, managers, agents, servants, employees, servants and/or workmen, and such acts and/or omissions were within the course and scope of their business, and were at their direction and/or authority. Accordingly,

any negligent acts and/or omissions committed by Defendants' officers, directors, managers, agents, servants, employees, servants and/or workmen imposes liability on Defendants John & Jane Does #1-10 under the laws of this Commonwealth, the laws of agency, *respondeat superior* and/or vicarious liability.

### IV. OPERATIVE FACTS

10. In or around 2005, the Blue Mountain & Reading Railroad expanded its operations and became known as the "Reading, Blue Mountain & Northern Railroad". A new passenger train operation and sister company to the Reading & Northern Railroad was then established and known as the Lehigh Gorge Scenic Railway.

11. In or around August 2020, the Reading & Northern Railroad began operations into Lehigh Gorge State Park in historic Jim Thorpe, Pennsylvania on the weekends, holidays and select weekdays through the month of December.

12. On November 25, 2022, Plaintiff invited and paid for her 3 adult children, with their spouses, and her 4 grandchildren (ranging from ages 6 to 11 at the time), to take a train ride on Defendants' Lehigh Gorge Scenic Railway (the "Jim Thorpe Holiday Train" and/or "Santa Train") during the Thanksgiving Break.

13. On that same date, Christmas characters, including Santa, a Reindeer, and a Snowman were aboard the Holiday Train.

14. The Holiday Train was very crowded and contained many children passengers as well.

15. The Christmas characters were presumably on the Train to entertain the children and get them into the Holiday spirit.

16. Upon information and belief, an individual named Angie Dolla was dressed as the "Reindeer" character and Defendant Fetterolf was dressed as the "Snowman" character.

17. Upon information and belief, this particular special Santa Train ride was Defendant

Fetterolf's first time portraying a "character" on the Railway Defendants' train.

18. Defendant Fetterolf was extremely animated in playing the "Snowman" character and she was hugging many of the passengers along her travel down the train aisle. Some of the passengers were taking "selfies" with the "Snowman" (Defendant Fetterolf).

19. When Defendant Fetterolf made her way to Plaintiff's seat/location, she placed her left hand around Plaintiff's back and rested same upon Plaintiff's left shoulder, as if to give her a hug, like she had been previously doing with the other passengers.

20. However, with her right hand, Defendant Fetterolf grabbed Plaintiff's right breast and squeezed same hard, several times.

21. This was done in front of witnesses, including one of Plaintiff's family members, who was sitting directly across from Plaintiff.

22. Plaintiff was visibly shocked, angry, upset, and traumatized.

23. This shocking and traumatizing event, and the aftermath, took place in front of strangers, including children that Plaintiff did not know, as well as her grandchildren.

24. Further, Defendant Fetterolf's unwelcome physical touching (firm squeezes) caused physical pain and injury to Plaintiff.

25. Prior to this assault, just four months earlier, in May 2022, Plaintiff had had breast surgery performed.

26. Several months after that surgery, in September 2022, only two months before Defendant Fetterolf grabbed and squeezed Plaintiff's right breast, Plaintiff sustained a physical injury to that same breast.

27. Plaintiff immediately reported the physical assault to Defendants' Conductor Colin Gipe.

28. Conductor Gipe advised Plaintiff that once the train arrived back at the Jim Thorpe visitor station, he would take Plaintiff to the "Railway Manager" ("Ray") so a written Report could be completed.

29. When the train arrived back at the Jim Thorpe Station, Mr. Gipe did in fact bring Plaintiff to "Railway Manager" Ray.

30. However, to add insult to injury, the Railway Defendants' "Railway Manager" treated Plaintiff with complete disrespect and as if she were the offender.

31. Defendants' "Railway Manager" Ray was completely unsympathetic to Plaintiff.

32. Indeed, Railway Manager Ray attempted to block Plaintiff from obtaining any information as to the identity of the "Snowman"[1]. He even refused to provide Plaintiff with his surname, with any contact information for himself, nor the identities of the Railroad owner(s).

33. "Railway Manager" Ray did not complete any report and was completely rude to Plaintiff. Indeed, he did not write anything down in front of Plaintiff, except her name and contact information. He even deliberately misdirected Plaintiff and told her to contact the Jim Thorpe Police Department to file a Report, despite knowing that it was not a Jim Thorpe matter (i.e., wasting Plaintiff's and the Jim Thorpe Police Department's time).

34. It was clear to Plaintiff that "Railway Manager" Ray was in damage control and attempting to conceal and cover up the criminal and negligent activity of Defendant Fetterolf.

35. In addition to having her right to privacy and right to bodily integrity violated, as a result of Defendant Fetterolf's offensive touching and assault, the entire event was ruined for Plaintiff and her family.

---

[1] An unidentified, female, Train Staff member, who initially accompanied "Ray" at the Visitor Station, actually told Plaintiff the identity of the Snowman.

36. As a direct and proximate result of the above-mentioned incident, the Plaintiff received serious physical injuries, as well as emotional distress.

37. As a further direct and proximate result of the above-mentioned incident, the Plaintiff has been and will be obliged to receive and undergo medical attention and care and incurred medical expenses and will continue to incur additional expenses for an indefinite period of time in the future, all to her great detriment and loss.

38. As a further direct and proximate result of the above-mentioned incident, the Plaintiff, has suffered agonizing aches and severe physical pains, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future, to her great detriment and loss.

**COUNT I**
**NEGLIGENCE- VICARIOUS LIABILITY**
**PLAINTIFF v. LEHIGH GORGE SCENIC RAILWAY AND READING, BLUE MOUNTAIN RAILROAD COMPANY**

39. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth more fully at length herein.

40. The Railway Defendants own and operate a commercial business, specifically a passenger train/transportation service company, and, as such, were obligated to conduct such train transportation services in a reasonably safe manner and/or not expose their passengers to unwelcome touching.

41. The Railway Defendants had a duty to conform to a certain standard of conduct and to ensure that their Staff members, including Defendant Fetterolf, conformed to a certain standard of conduct.

42. The Railway Defendants breached that duty and caused injury to Plaintiff.

43. Specifically, the Railway Defendants had the duty to protect, supervise, and monitor all passengers, such as Plaintiff, who they were transporting on their Trains.

44. The Railway Defendants had an affirmative obligation to protect Plaintiff and other passengers from dangerous, offensive, criminal, and unsafe conditions, including unwelcome and offensive touching and invasion of privacy.

45. The Railway Defendants also had an affirmative obligation to not create, tolerate, or ignore dangerous, offensive, criminal and unsafe conditions on their Trains, including, but not limited to, allowing their own Staff members, such as Defendant Fetterolf, to physically and offensively touch their Train passengers.

46. Upon information and belief, the Railway Defendants, negligently and/or recklessly entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants' train(s) as a Car Host.

47. Defendant Fetterolf was an agent and/or employee of the Railway Defendants, and directly played a role in the incident involving Plaintiff.

48. The Railway Defendants had an obligation to report their own Staff member, Defendant Fetterolf, to law enforcement and authorities, and ensure that she was properly disciplined for offensively intruding upon and offensively touching a passenger and for violating that passenger's privacy rights on their Train.

49. The Railway Defendants failed to warn Plaintiff of the improperly trained Staff member, Defendant Fetterolf, working on their Train on the day in question.

50. The negligence and carelessness of these Defendants consisted, *inter alia*, of their failure to ensure safe transportation for their passengers, including Plaintiff, their failure to warn Plaintiff that Defendant Fetterolf, the perpetrator of the sexual and/or physical assault, was improperly trained and allowed to interact with passengers on their train on the day in question,

and their failure to take other steps to adequately supervise and monitor their passengers.

51. The Railway Defendants knew or had reason to know that a danger was presented when newly hired, improperly trained Staff members were allowed to travel and interact with their passengers on their Train. Their failure to enforce their own policies governing new hires, such as Defendant Fetterolf, who was permitted to ride on and interact with passengers on their Train, proximately caused the situation described herein and the resulting injuries.

52. It was reasonably foreseeable that passengers could be harassed, assaulted, or harmed by newly hired, improperly trained Staff members on their Train.

53. The Railway Defendants are vicariously liable for the negligence, offensive touching, physical offensive intrusion, privacy violations, and other misconduct of Defendant Fetterolf.

54. As a direct and proximate result of said acts, Plaintiff has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, and diminished enjoyment of life, and Plaintiff, has been and will be required to expend diverse sums for medical and psychological care and treatment and will otherwise suffer economic losses.

**WHEREFORE**, Plaintiff, demands compensatory and punitive damages against Defendants, jointly and/or severally in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus interest, costs, damages and other appropriate relief, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

**COUNT II**
**NEGLIGENCE**
**PLAINTIFF v. DEFENDANT KAITLYN BECHLER FETTEROLF**

55. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

56. Defendant Fetterolf negligently and/or carelessly failed to perform her job duties

and responsibilities as a Car Host.

57. Defendant Fetterolf negligently and carelessly interacted with the passengers, including, specifically, Plaintiff, in such a way to cause harm and injury to the Plaintiff.

58. Defendant Fetterolf negligently and carelessly engaged in behavior and misconduct that led to the offensive touching and harm to the Plaintiff.

59. Defendant Fetterolf has a duty to conform to a certain standard of conduct.

60. Defendant Fetterolf breached that duty.

61. Asa result of Defendant Fetterolf's breach of her duties, as set forth above, Defendant Fetterolf caused injury to Plaintiff.

62. As a direct and proximate result of Defendant Fetterolf's breach of duty, Plaintiff has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, and diminished enjoyment of life, and Plaintiff, has been and will be required to expend diverse sums for medical and psychological care and treatment and will otherwise suffer economic losses.

**WHEREFORE**, Plaintiff, demands compensatory and punitive damages against Defendants, jointly and/or severally in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus interest, costs, damages and other appropriate relief, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

**COUNT III**
**NEGLIGENT HIRING, SUPERVISION, TRAINING, AND RETENTION**
**PLAINTIFF v. LEHIGH GORGE SCENIC RAILWAY AND READING, BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY**

63. Plaintiff repeats and restates each and every allegation contained in the foregoing Paragraphs as if set forth herein.

64. At all times relevant hereto, the Railway Defendants, by and through their agents, representatives and employees, owned, possessed, maintained, and operated the train described in the above-mentioned incident.

65. At all times relevant hereto, the Railway Defendants owed a duty to exercise reasonable care in selecting, supervising and controlling its employees, including Defendant Fetterolf.

66. At all material times, Defendant Fetterolf, as a Car Host for the Railway Defendants, acted within the course and scope of her employment, and pursuant to the customs, policies and/or practices of the Railway Defendants.

67. At the time of the aforesaid incident, Defendant Fetterolf was acting under the direction and control of the Railway Defendants.

68. At all material times, the Railway Defendants were charged with the responsibility of hiring, training, disciplining and supervising members of its staff, including Defendant Fetterolf.

69. Because of the surrounding circumstances, the Railway Defendants were obligated to train, instruct, supervise, control, and discipline Defendant Fetterolf and should have had the knowledge that the wrongs done were about to be committed.

70. Upon information and belief, the Railway Defendants, negligently and/or recklessly entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants' train(s) as a Car Host.

71. The Railway Defendants, in employing Defendant Fetterolf as a Car Host to portray a Christmas character aboard the Defendants' special "Santa Train" ride, negligently and carelessly:

    a. Allowed Defendant Bechler Fetterolf when the Railway Defendants knew, or in the exercise of ordinary care should have known, that Defendant Fetterolf was not trained, unfit, unqualified, and/or a person of deviant propensities, such as to render Defendant Fetterolf as a risk to the privacy rights, safety, and security of the patrons of the Lehigh Gorge Scenic Railway in Jim Thorpe; and

    b. Employed Defendant Bechler Fetterolf, as a "Car Host" and to portray a Christmas character on the Railway Defendants' special "Santa Train", with notice or knowledge of the fact that Defendant Fetterolf was not trained, unfit, unqualified, and/or a person of deviant propensities.

72. The Railway Defendants are and were responsible for the hiring, training, retaining and supervising of trained, fit, and competent Car Hosts and Staff for their Train.

73. The Railway Defendants' negligence includes, but is not limited to, the following:

    a) The failure to prevent the sexual and/or physical assault of, abuse of, and the invasion of the privacy of Plaintiff by Defendants' staff member, Defendant Fetterolf;

    b) The failure to protect the rights, safety, and health of Plaintiff;

    c) The failure to create adequate protocol and sufficient oversight of employees to protect the privacy of passengers while on their Train;

    d) failed to provide proper security;

    e) failed to provide safe transport;

    f) The failure to properly handle and assist Plaintiff after she had experienced the sexual and/or physical assault and had reported same to the Railway Defendants;

    g) Defendants' efforts to conceal and cover-up the extent of Defendant Fetterolf's misconduct, after it had been immediately reported; and

    h) otherwise failed to exercise due care under the circumstances.

74. In the alternative, the Railway Defendants negligently allowed the improper and offensive touching by Defendant Fetterolf to occur.

75. As a direct and proximate result of the Railway Defendants' negligence and the wrongful acts and omissions as aforesaid, Plaintiff suffered serious injuries, including emotional and mental anguish, causing her pain and suffering, direct consequential economic damages, and other personal and property damages.

76. The Railway Defendants were aware of a pattern of the above misconduct used by Defendant Fetterolf and were aware that their failure to investigate and discipline Defendant Fetterolf, would result in violations of passengers' rights to privacy and violations of other statutory and constitutional rights. That failure caused Plaintiff to be harmed and injured as set forth above. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

77. Acting pursuant to official policy, practice, or custom, the Railway Defendants intentionally, knowingly, recklessly and negligently failed to instruct, supervise, control, and discipline, on a continuing basis, Defendant Fetterolf, as to correct procedures and to refrain from the misconduct described above. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

78. Acting pursuant to official policy, practice, or custom, the Railway Defendants had knowledge or, had they diligently exercised their duties to instruct, train, supervise, control and discipline Defendant Fetterolf, should have known that the above-described wrongs were about to be committed. They had the power to prevent or aid in the prevention of said wrongs and could have done so with reasonable diligence and intentionally, knowingly or recklessly failed or refused to do so.

79. Given the vulnerable status of passengers, the failure to appropriately hire and train staff, supervise, and/or enact and enforce appropriate preventative, reporting, or investigation policies was of such egregious character to constitute a willful and wanton disregard of the risk of serious injury and/or harm to Plaintiff.

80. The Railway Defendants are and were responsible for the hiring, training, retaining and supervising of fit and competent Staff for their passenger Train rides.

81. The Railway Defendants' negligent failure to hire, train, retain and supervise

sufficient and competent Car Hosts, supervisors, managers, and any other personnel necessary to oversee and monitor its Train rides and its passengers, was the proximate cause of the injuries suffered by Plaintiff.

82. The Railway Defendants' negligence with respect to the hiring, supervising, monitoring, training, and retention of Defendant Fetterolf was the proximate cause of the injuries suffered by Plaintiff.

83. If the Railway Defendants had undertaken such instructive, disciplinary or corrective action, the individual Defendant, Fetterolf, would not have unlawfully and offensively touched the Plaintiff.

84. As a direct and proximate result of the Railway Defendants' negligence and the wrongful acts and omissions as aforesaid, Plaintiff suffered serious injuries, including emotional and mental anguish, causing them pain and suffering, direct consequential economic damages, and other personal and property damages.

**WHEREFORE**, Plaintiff, demands compensatory and punitive damages against Defendants, jointly and/or severally in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus interest, costs, damages and other appropriate relief, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

<u>**COUNT IV**</u>
<u>**ASSAULT AND BATTERY**</u>
<u>**PLAINTIFF v. KAITLYN BECHLER FETTEROLF**</u>

85. Plaintiff repeats and realleges each and every aforementioned allegation of the Complaint as though set forth herein more fully at length.

86. Plaintiff believes and therefore avers that Defendant Kaitlyn Bechler Fetterolf,

acting within the course and scope of her authority, wrongfully and unlawfully assaulted and battered the Plaintiff, by causing physical injury to Plaintiff's right breast.

87. Defendant Fetterolf, acting within the course and scope of her authority, acted without the consent of Plaintiff.

88. The above-described actions of Defendant Fetterolf placed the Plaintiff in the reasonable fear of imminent bodily harm and resulted in the Plaintiff being unlawfully and offensively touched, assaulted, battered, and abused against her will.

89. The above-described actions of Defendant Fetterolf was harmful, highly offensive, and certainly was not reasonable.

90. As a direct and proximate result of the assault and battery by Defendant Fetterolf, the Plaintiff suffered injuries that are described above.

91. The above-described actions of Defendant Fetterolf were so malicious, intentional and/or reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, Plaintiff, demands compensatory and punitive damages against Defendants, jointly and/or severally in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus interest, costs, damages and other appropriate relief, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF v. ALL DEFENDANTS

92. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth more fully at length herein.

93. Defendant Fetterolf's unauthorized, unwarranted, unlawful and offensive touching of Plaintiff was extreme and outrageous and was performed in deliberate disregard of the high degree of probability that emotional distress of Plaintiff would follow.

94. As a direct and proximate result of the Defendant Fetterolf's intentional wrongful acts and omissions, Plaintiff suffered serious injuries, including substantial emotional, and mental anguish, and psychological injury, causing her pain and suffering, direct consequential economic damages, and other personal and property damages.

**WHEREFORE**, Plaintiff, demands compensatory and punitive damages against Defendants, jointly and/or severally in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus interest, costs, damages and other appropriate relief, to fairly and adequately compensate Plaintiff and punish and deter such conduct on the part of Defendants and others similarly situated, in addition to interest, costs, attorney's fees, delay damages, and all other appropriate relief.

ABRAMSON & DENENBERG, P.C.

**BY:** /s/ *Alan E. Denenberg*
ALAN E. DENENBERG, ESQ.