IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELIQUE YONKAUSKE                    :
                                       :
              Plaintiff,               :    3:24-cv-02044
                                       :    (JUDGE MARIANI)
      v.                               :
                                       :
LEHIGH GORGE SCENIC RAILWAY            :
*et. al*,                              :
                                       :
              Defendants.              :

## MEMORANDUM OPINION

Presently before the Court is Defendant Lehigh Gorge Scenic Railway, Reading,

Blue Mountain & Northern Railroad Company, and Kaitlyn Bechler Fetterolf (collectively,

"Defendants") partial motion for judgment on the pleadings.[1]  For the reasons that follow,

Defendants' motion will be granted in part and denied in part.

## I.    INTRODUCTION & PROCEDURAL HISTORY

On November 25, 2024, Plaintiff Angelique Yonkauske ("Plaintiff") filed a Complaint

against the Defendants.  (Doc. 1).  In the Complaint, Plaintiff brings five claims under

Pennsylvania law:  negligence/vicarious liability against the Railway Defendants (Count I), a

negligence claim against Defendant Kaitlyn Bechler Fetterolf (Count II), a negligent

hiring/supervision/training/entrustment and retention claims against the Railway Defendants

(Count III), common law assault and battery against Defendant Kaitlyn Bechler Fetterolf

---

[1]    The Court will refer to Defendants Lehigh Gorge Scenic Railway and the Reading, Blue, Mountain &
Northern Railroad Company as the "Railway Defendants."

(Count IV), and intentional infliction of emotional distress against all Defendants (Count V). (Doc. 1, at 6-15). Defendants filed an Answer along with several exhibits on March 12, 2025. (Docs. 15, 15-1-15-8). That same day, Defendants filed the instant motion for partial judgment on the pleadings. (Doc. 16). The matter has been fully briefed and is ripe for disposition.[2]

## II.    FACTUAL ALLEGATIONS

Plaintiff's Complaint alleges the following facts:

Plaintiff Angelique Yonkauske is an adult individual and citizen of the State of New Jersey. (Doc. 1, at ¶ 4). Defendant Reading, Blue Mountain & Northern Railroad Company ("RBMNRR") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. (*Id.*, ¶ 5). Defendant RBMNRR is owned and operated by Andy M. Muller, Jr. (*Id.*). Defendant Lehigh Gorge Scenic Railway is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. (*Id.*, ¶ 6). Upon information and belief, Defendant Lehigh Gorge Scenic Railway is owned and operated by Defendant RBMNRR and hosts train rides to individuals in Jim Thorpe, Pennsylvania. (*Id.*). Defendant Kaitlyn Bechler Fetterolf ("Fetterolf") at all times relevant was an adult individual who was and remains employed by the Railway Defendants. (*Id.*, ¶ 8). Upon information and belief, Defendant Fetterolf was a fairly new hire (July 2022) of the Railway Defendants at the time

---

[2]    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of the State of New Jersey and Defendants are citizens of the Commonwealth of Pennsylvania and the amount in controversy exceeds $75,000.

of the incident described herein. (*Id.*). "At all times relevant hereto, Defendants John & Janes Does #1-10 and XYZ Corps #1-10, named herein acted and/or failed to act due [sic] through their officers, directors, managers, agents, servants, employees, servants [sic] and/or workmen, and such acts and/or omissions were within the course and scope of their business, and were at their direction and/or authority." (*Id.*, ¶ 9). "Accordingly, any negligent acts and/or omissions committed by Defendants' officers, directors, managers, agents, servants, employees, servants [sic] and/or workmen imposes liability on Defendants John & Jane Does #1-10 under the laws of this Commonwealth, the laws of agency, *respondent superior* and/or vicarious liability." (*Id.*).

In or around 2005, the Blue Mountain & Reading Railroad expanded its operation and become known as the "Reading, Blue Mountain & Northern Railroad." (*Id.*, ¶ 10). A new passenger train operation and sister company to the Reading & Northern Railroad was then established and known as the Lehigh Gorge Scenic Railway. (*Id.*). In or around August 2020, the Reading & Northern Railroad began operations in the Lehigh Gorge State Park in historic Jim Thorpe, Pennsylvania on the weekends, holidays, and select weekends through the month of December. (*Id.*, ¶ 11).

On November 25, 2022, Plaintiff invited and paid for her 3 adult children, with their spouses, and her 4 grandchildren (ranging from ages 6 to 11 at the time), to take a train ride on Defendants' Lehigh Gorge Scenic Railway (the "Jim Thorpe Holiday Train" and/or "Santa Train") during the Thanksgiving Break. (*Id.*, ¶ 12). On that same day, Christmas

3

characters, including Santa, a Reindeer, and a Snowman were aboard the Holiday Train. (*Id.*, ¶ 13). The Holiday train was very crowded and contained many children passengers as well. (*Id.*, ¶ 14). The Christmas characters were presumably on the Train to entertain the children and get them into the Holiday spirit. (*Id.*, ¶ 15). Upon information and belief, an individual named Angie Dolla was dressed as the "Reindeer" character and Defendant Fetterolf was dressed as the "Snowman" character. (*Id.*, ¶ 16). Upon information and belief, this particular special Santa Train ride was Defendant Fetterolf's first time portraying a "character" on the Railway Defendants' train. (*Id.*, ¶ 17).

Defendant Fetterolf was extremely animated in playing the "Snowman" character and she was hugging many of the passengers along her travel down the train aisle. (*Id.*, ¶ 18). Some of the passengers were taking "selfies" with the "Snowman" (Defendant Fetterolf). (*Id.*). When Defendant Fetterolf made her way to Plaintiff's seat/location, she placed her left hand around Plaintiff's back and rested same upon Plaintiff's left shoulder, as if to give her a hug, like she had been previously doing with other passengers. (*Id.*, ¶ 19). However, with her right hand, Defendant Fetterolf grabbed Plaintiff's right breast and squeezed same hard, several times. (*Id.*, ¶ 20). This was done in front of witnesses, including one of Plaintiff's family members, who was sitting directly across from Plaintiff. (*Id.*, ¶ 21). Plaintiff was visibly shocked, angry, upset, and traumatized. (*Id.*, ¶ 22). This shocking and traumatizing event, and the aftermath, took place in front of strangers, including children that Plaintiff did not know, as well as her grandchildren. (*Id.*, ¶ 23). Further, Defendant's Fetterolf's

unwelcome physical touching (firm squeezes) caused physical pain and injury to Plaintiff. (*Id.*, ¶ 24). "Prior to this assault, just four months earlier, in May 2022, Plaintiff had had breast surgery performed." (*Id.*, ¶ 25). Several months after that surgery, in September 2022, only two months before Defendant Fetterolf grabbed and squeezed Plaintiff's right breast, Plaintiff sustained a physical injury to that same breast. (*Id.*, ¶ 26).

Plaintiff immediately reported the physical assault to Defendants' Conductor Colin Gipe. (*Id.*, ¶ 27). Conductor Gipe advised Plaintiff that once the train arrived back at the Jim Thorpe visitor station, he would take Plaintiff to the "Railway Manager" ("Ray") so a written report could be completed. (*Id.*, ¶ 28). When the train arrived back at the Jim Thorpe Station, Mr. Gipe did in fact bring Plaintiff to "Railway Manager" Ray. (*Id.*, ¶ 29). However, to add insult to injury, the Railway Defendants' "Railway Manager" treated Plaintiff with complete disrespect and as if she were the offender. (*Id.*, ¶ 30). Defendants' "Railway Manager" Ray was completely unsympathetic to Plaintiff. (*Id.*, ¶ 31). Indeed, Railway Manager Ray attempted to block Plaintiff from obtaining any information as to the identity of the "Snowman."[3] (*Id.*, ¶ 32). "Railway Manager" Ray did not complete any report and was completely rude to Plaintiff. (*Id.*, ¶ 33). Indeed, he did not write anything down in front of Plaintiff, except her name and contact information. (*Id.*). He even deliberately misdirected Plaintiff and told her to contact the Jim Thorpe Police Department to file a Report, despite

---

[3]    "An unidentified, female, Train Staff member, who initially accompanied 'Ray' at the Visitor Station, actually told Plaintiff the identity of the Snowman." (Doc. 1, ¶ 32 n.1).

knowing that it was not a Jim Thorpe matter (i.e., wasting Plaintiff's and the Jim Thorpe Police Department's time).  (*Id.*).  It was clear to Plaintiff that "Railway Manager" Ray was in damage control and attempting to conceal and cover up the criminal and negligent activity of Defendant Fetterolf.  (*Id.*).

In addition to having her right to privacy and right to bodily integrity violated, as a result of Defendant Fetterolf's offensive touching and assault, the entire event was ruined for Plaintiff and her family.  (*Id.*, ¶ 35).  As a direct and proximate result of the above-mentioned incident, the Plaintiff received serious physical injuries, as well as emotional distress.  (*Id.*, ¶ 36).  "As a further direct and proximate result of the above-mentioned incident, the Plaintiff has been and will be obliged to receive and undergo medical attention and care and incurred medical expenses and will continue to incur additional expenses for an indefinite period of time in the future, all to her great detriment and loss." (*Id.*, ¶ 37).  "As a further direct and proximate result of the above-mentioned incident, the Plaintiff has suffered agonizing aches and severe physical pains, mental anguish and humiliation, and will continue to suffer same for an indefinite time in the future, to her great detriment and loss." (*Id.*, ¶ 38)

In Count I Plaintiff brings a negligence claim against the Railway Defendants claiming they are vicariously liable for the conduct of its agents and employees.  Plaintiff alleges the follows:  The Railway Defendants own and operate a commercial business, specifically, a passenger train/transportation service company, and, as such, were obligated

to conduct such train transportation services in a reasonably safe manner and/or not expose

their passengers to unwelcome touching.  (*Id.*, ¶ 40).  The Railway Defendants had a duty

to conform to a certain standard of conduct and to ensure that their Staff members,

including Defendant Fetterolf, conformed to a certain standard of conduct.  (*Id.*, ¶ 41).  The

Railway Defendants breached that duty and caused injury to Plaintiff.  (*Id.*, ¶ 42).

Specifically, the Railway Defendants had the duty to protect, supervise, and monitor all

passengers, such as Plaintiff, who they were transporting on their Trains.  (*Id.*, ¶ 43).  The

Railway Defendants had an affirmative obligation to protect Plaintiff and other passengers

from dangerous, offensive, criminal, and unsafe conditions, including unwelcome and

offensive touching and invasion of privacy.  (*Id.*, ¶ 44).  The Railway Defendants also had

an affirmative obligation to not create, tolerate, or ignore dangerous, offensive, criminal and

unsafe conditions on their Trains, including, but not limited to, allowing their own Staff

members, such as Defendant Fetterolf, to physically and offensively touch their Train

passengers.  (*Id.*, ¶ 45).

        Upon information and belief, the Railway Defendants negligently and/or recklessly

entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants'

train(s) as a Car Host.  (*Id.*, ¶ 46).  Defendant Fetterolf was an agent and/or employee of the

Railway Defendants and directly played a role in the incident involving Plaintiff.  (*Id.*, ¶ 47).

The Railway Defendants had an obligation to report their own Staff member, Defendant

Fetterolf, to law enforcement and authorities, and ensure that she was properly disciplined

for offensively intruding upon and offensively touching a passenger and for violating that

passenger's privacy rights on their Train. (*Id.*, ¶ 48). The Railway Defendants failed to

warn Plaintiff of the improperly trained Staff member, Defendant Fetterolf, working on their

Train on the day in question. (*Id.*, ¶ 49). The negligence and carelessness of these

Defendants consisted, *inter alia*, of their failure to ensure safe transportation for their

passengers, including Plaintiff, their failure to warn Plaintiff that Defendant Fetterolf, the

perpetrator of the sexual and/or physical assault, was improperly trained and allowed to

interact with passengers on their train on the day in question, and their failure to take other

steps to adequately supervise and monitor their passengers. (*Id.*, ¶ 50).

The Railway Defendants knew or had reason to know that a danger was presented

when newly hired, improperly trained Staff Members were allowed to travel and interact with

their passengers on their Train. (*Id.*, ¶ 51). Their failure to enforce their own policies

governing new hires, such as Defendant Fetterolf, who was permitted to ride on and interact

with passengers on their Train, proximately caused the situation described herein and the

resulting injuries. (*Id.*). It was reasonably foreseeable that passengers could be harassed,

assaulted, or harmed by newly hired, improperly trained Staff members on their Train. (*Id.*,

¶ 52). The Railway Defendants are vicariously liable for the negligence, offensive touching,

physical offensive intrusion, privacy violations, and other misconduct of Defendant Fetterolf.

(*Id.*, ¶ 53). As a direct and proximate result of said acts, Plaintiff has suffered permanent,

severe and continuing injuries, including emotional, psychological and physical injuries, pain

and suffering, and diminished enjoyment of life, and Plaintiff has been and will be required to expend diverse sums for medical and psychological care and treatment and will otherwise suffer economic losses. (*Id.*, ¶ 54).

In Count II, Plaintiff brings a direct negligence claim against Defendant Fetterolf. (Doc. 1 at 8-9). Plaintiff alleges that Defendant Fetterolf negligently and/or carelessly failed to perform her job duties and responsibilities as a Car Host. (*Id.*, ¶ 56). Defendant Fetterolf negligently and carelessly interacted with the passengers, including, specifically, Plaintiff, in such a way to cause harm and injury to the Plaintiff. (*Id.*, ¶ 57). Defendant Fetterolf negligently and carelessly engaged in behavior and misconduct that led to the offensive touching and harm to the Plaintiff. (*Id.*, ¶ 58). Defendant Fetterolf has a duty to conform to a certain standard of conduct. (*Id.*, ¶ 59). Defendant Fetterolf breached this duty. (*Id.*, ¶ 60). As a result of Defendant Fetterolf's breach of her duties, as set forth above, Defendant Fetterolf caused injury to Plaintiff. (*Id.*, ¶ 61). "As a direct and proximate result of Defendant's Fetterolf breach of duty, Plaintiff has suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, diminished enjoyment of life, and Plaintiff has been and will be required to expend diverse sums for medical and psychological care and treatment and will otherwise suffer economic losses." (*Id.*, ¶ 62).

In Count III, Plaintiff alleges claims against the Railway Defendants for negligent hiring, negligent supervision, negligent training, negligent entrustment, and negligent

retention. (Doc. 1 at 9-13). Plaintiff alleges that at all times relevant hereto, the Railway Defendants, by and through their agents, representatives and employees, owned, possessed, maintained, and operated the train described in the above-mentioned incident. (*Id.*, ¶ 64). At all times relevant hereto, the Railway Defendants owed a duty to exercise reasonable care in selecting, supervising and controlling its employees, including Defendant Fetterolf. (*Id.*, ¶ 65). At all material times, Defendant Fetterolf, as a Car Host for the Railway Defendants, acted within the course and scope of her employment, and pursuant to the customs, policies and/or practices of the Railway Defendants. (*Id.*, ¶ 66). At the time of the aforesaid incident, Defendant Fetterolf was acting under the direction and control of the Railway Defendants. (*Id.*, ¶ 67). At all material times, the Railway Defendants were charged with the responsibility of hiring, training, disciplining and supervising members of its staff, including Defendant Fetterolf. (*Id.*, ¶ 68). Because of the surrounding circumstances, the Railway Defendants were obligated to train, instruct, supervise, control, and discipline Defendant Fetterolf and should have had the knowledge that the wrongs done were about to be committed. (*Id.*, ¶ 69). Upon information and belief, the Railway Defendants negligently and/or recklessly entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants' train(s) as a Car Host. (*Id.*, ¶ 70).

The Railway Defendants, in employing Defendant Fetterolf as a Car Host to portray a Christmas character abroad the Defendants' special "Santa Train" ride negligently and carelessly:

    a. Allowed Defendant Bechler Fetterolf when the Railway Defendants knew, or in the exercise of ordinary care should have known, that Defendant Fetterolf was not trained, unfit, unqualified, and/or a person of deviant propensities, such as to render Defendant Fetterolf as a risk to the privacy rights, safety, and security of the patrons of the Lehigh George Scenic Railway in Jim Thorpe; and

    b. Employed Defendant Bechler Fetterolf, as a "Car Host" and to portray a Christmas character on the Railway Defendants' special "Santa Train", with notice or knowledge of the fact that Defendant Fetterolf was not trained, unfit, unqualified, and/or a person of deviant propensities.

(*Id.*, ¶ 71). The Railway Defendants are and were responsible for the hiring, training, retaining, and supervising of trained, fit, and competent Car Hosts and Staff for their Train. (*Id.*, ¶ 72). The Railway Defendants' negligence includes, but is not limited to, the following: (a) the failure to prevent the sexual and/or physical assault of, abuse of, and the invasion of the privacy of Plaintiff by Defendants' staff member, Defendant Fetterolf; (b) the failure to protect the rights, safety, and health of Plaintiff; (c) the failure to create adequate protocol and sufficient oversight of employees to protect the privacy of passengers while on their Train; (d) failed to provide proper security; (e) failure to provide safe transport; (f) the failure to properly handle and assist Plaintiff after she had experienced the sexual and/or physical assault and had reported safe to the Railway Defendants; (g) Defendants' effort to conceal and cover-up the extent of Defendant Fetterolf's misconduct, after it had been immediately

reported; and (h) otherwise failed to exercise due care under the circumstances.. (*Id.*, ¶ 73).

In the alternative, the Railway Defendants negligently allowed the improper and offensive touching by Defendant Fetterolf to occur. (*Id.*, ¶ 74). As a direct and proximate result of the Railway Defendants' negligence and the wrongful acts and omissions as aforesaid, Plaintiff suffered serious injuries, including emotional and mental anguish, causing her pain and suffering, direct consequential economic damages, and other personal and property damages. (*Id.*, ¶ 75). "The Railway Defendants were aware of a pattern of the above misconduct used by Defendant Fetterolf and were aware that their failure to investigate and discipline Defendant Fetterolf, would result in violations of passengers' rights to privacy and violations of other statutory and constitutional rights." (*Id.*, ¶ 76). "The failure caused Plaintiff to be harmed and injured as set forth above." (*Id.*). "The allegations in the paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery." (*Id.*).

Acting pursuant to official policy, practice, or custom, the Railway Defendants intentionally, knowingly, recklessly and negligent failed to instruct, supervise, control, and discipline, on a continuing basis, Defendant Fetterolf, as to correct procedures and to refrain from the misconduct described above. (*Id.*, ¶ 77). The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. (*Id.*). Acting pursuant to an official policy, practice, or custom, the Railway

Defendants had knowledge of, or had they diligently exercised their duties to instruct, train, supervise, control and discipline Defendant Fetterolf, should have known that the above-described wrongs were about to be committed. (*Id.*, ¶ 78). They had the power to prevent or aid in the prevention of said wrongs and could have done so with reasonable diligence and intentionally, knowingly or recklessly failed or refused to do so. (*Id.*).

Given the vulnerable status of passengers, the failure to appropriately hire and train staff, supervise, and/or enact and enforce appropriate preventative, reporting, or investigation policies was of such egregious character to constitute a willful and wanton disregard of the risk of serious injury and/or harm to Plaintiff. (*Id.*, ¶ 79). The Railway Defendants are and were responsible for the hiring, training, retaining and supervising of fit and competent Staff for their passenger Train rides. (*Id.*, ¶ 80). The Railway Defendants' negligent failure to hire, train, retain, and supervise sufficient and competent Car Hosts, supervisors, managers, and any other personnel necessary to oversee and monitor its Train rides and its passengers, was the proximate cause of the injuries suffered by Plaintiff. (*Id.*, ¶ 81). The Railway Defendants' negligence with respect to the hiring, supervising, monitoring, training, and retention of Defendant Fetterolf was the proximate cause of the injuries suffered by Plaintiff. (*Id.*, ¶ 82). If the Railway Defendants had undertaken such instructive, disciplinary or corrective action, the individual Defendant, Fetterolf, would not have unlawfully and offensively touched the Plaintiff. (*Id.*, ¶ 83). "As a direct and proximate result of the Railway Defendants' negligence and the wrongful acts and omissions as

aforesaid, Plaintiff suffered serious injuries, including emotional and mental anguish, causing them pain and suffering, direct consequential economic damages, and other personal and property damages." (*Id.*, ¶ 84).

In Count IV, Plaintiff alleges claims against Defendant Fetterolf for common law assault and battery. (Doc. 1 at 13-14). "Plaintiff believes and therefore avers that Defendant Kaitlyn Bechler Fetterolf, acting within the course and scope of her authority, wrongfully and unlawfully assaulted and battered the Plaintiff, by causing physical injury to Plaintiff's right breast." (*Id.*, ¶ 86). Defendant Fetterolf, acting within the course and scope of her authority, acted without the consent of Plaintiff. (*Id.*, ¶ 87). The above-described actions of Defendant Fetterolf placed the Plaintiff in the reasonable fear of imminent bodily harm and resulted in the Plaintiff being unlawfully and offensively touched, assaulted, battered, and abused against her will. (*Id.*, ¶ 88). "The above-described actions of Defendant Fetterolf was harmful, highly offensive, and certainly was not reasonable." (*Id.*, ¶ 89). As a direct and proximate result of the assault and battery by Defendant Fetterolf, the Plaintiff suffered injuries that are described above. (*Id.*, ¶ 90). The above-described actions of Defendant Fetterolf were so malicious, intentional and/or reckless and displayed such reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted. (*Id.*, ¶ 91).

In Count V, Plaintiff brings a claim for Intentional Infliction of Emotional Distress against all the Defendants. (Doc. 1 at 14-15). Plaintiff alleges that "Defendant Fetterolf

unauthorized, unwarranted, unlawful and offensive touching of Plaintiff was extreme and

outrageous and was performed in deliberate disregard of the high degree of probability that

emotional distress of Plaintiff would follow." (*Id.*, ¶ 93). "As a direct and proximate result of

the Defendant Fetterolf's intentional wrongful acts and omissions, Plaintiff suffered serious

injuries, including substantial emotional, and mental anguish, and psychological injury,

causing her pain and suffering, direct consequential economic damages, and other personal

and property damages." (*Id.*, ¶ 94).

On March 12, 2025, Defendants filed their Answer along with several exhibits,

generally denying the allegations in Plaintiff's Complaint. (Doc. 15). The Court will not

consider the exhibits attached to Defendants' Answer in ruling on this motion, because to do

so would require converting Defendant's motion for judgment on the pleadings into a motion

for summary judgment and Plaintiff would therefore lack notice and the opportunity to

address that standard. (Docs. 15-1-15-8); *see Wolfington v. Reconstructive Orthopaedic

Assoc. II P.C.*, 935 F.3d 187 (3d Cir. 2019) (district court improperly converted defendant's

motion for judgment on the pleadings into one for summary judgment).

## III. <u>STANDARD OF REVIEW</u>

"After the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Federal Rule of Civil

Procedure 12(c), judgment on the pleadings is only appropriate in favor of the moving party

when that party "clearly establishes that no material issue of fact remains to be resolved"

such that the party is "entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*,

539 F.3d 218, 221 (3d Cir. 2008); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d

Cir. 2008) ("Judgment will only be granted where the moving party clearly establishes that

are no material issues of fact, and that he or she is entitled to judgment as a matter of

law.").

When reviewing a motion for judgment on the pleadings, a court must view the

facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000). In other words, a district court

applies the same standard to a motion for judgment on the pleadings as a motion to dismiss

pursuant to Rule 12(b)(6), but may also review the answer and certain instruments attached

to the pleadings. *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV.    ANALYSIS

Defendants seek partial judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c). (Doc. 16). First, Defendants argue that Defendant Lehigh Scenic Gorge

Railway is a fictitious name registered by Defendant RBMNRR and thus the claims asserted

against Lehigh Scenic Gorge Railway in Counts I, III, and V are redundant and must be

dismissed. (Doc. 17 at 12-14). Second, Defendants seek dismissal of Count I, claiming

that Defendant RBMNRR cannot be vicariously liable because the alleged grabbing and

squeezing of Plaintiff's breast was not within the scope of Defendant Fetterolf's

employment. (*Id.* at 14-16). Third, Defendants seek dismissal of Count III, claiming that

Plaintiff has failed to state a plausible claim for negligent hiring, supervision, training,

entrustment, or retention against Defendant RBMNRR. (*Id.* at 16-20). Fourth, Defendants

seek dismissal of Count IV alleging assault against Defendant Fetterolf, claiming that

Plaintiff has failed to allege a plausible claim for common law assault.[4] (*Id.* at 20-22). Fifth,

Defendants seek dismissal of Count V because Plaintiff has failed to put forward a plausible

claim for intentional infliction of emotional distress. (*Id.* at 22-23). Finally, Defendants ask

the Court to strike Plaintiff's demand for attorney's fees. (*Id.* at 24). Plaintiff opposes

Defendants' motion. (Doc. 20-1). Because this is a diversity action and Plaintiff only

asserts state law claims, the Court will apply Pennsylvania substantive law. *Chamberlain v.*

---

[4]    Defendants do not seek dismissal of Plaintiff's battery claim alleged in Count IV at this stage of the proceedings. (Doc. 17 at 20 n.1).

*Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 203 U.S. 64, 78 (1938)).

### A.    All Claims Against the Fictitious Entity Lehigh Valley Scenic Gorge Railway Will be Dismissed.

Defendants seek dismissal of all claims against Defendant Lehigh Scenic Gorge Railway because it is a fictitious name registered by Defendant RBMNRR and thus the claims asserted against Lehigh Scenic Gorge Railway in Counts I, III, and V are redundant and must be dismissed. (Doc. 17 at 12-14).  Plaintiff does not oppose dismissing the claims against the fictitious entity Lehigh Valley Scenic Gorge Railway.  (Doc. 20-1 at 13) ("Section B of Defendants' Brief deals with the fictitious entity Lehigh Scenic Gorge Railway.  Plaintiff does not oppose this portion of Defendants' application.").  Because this part of the motion is unopposed, the Court will grant Defendants' motion for judgment on the pleadings and will dismiss Defendant Lehigh Scenic Railway from this action.

### B.    Plaintiff's Demand for Attorney's Fees Will Be Stricken

Defendant next moves to strike Plaintiff's demand for attorney's fees.  (Doc. 17 at 24).  Plaintiff does not oppose this part of Defendants' motion.  (Doc. 20-1 at 13) ("Section G of Defendants' Brief deals with Plaintiff's demand for Attorney's Fees.  Plaintiff does not oppose this portion of Defendants' application.").  Because this part of the motion is unopposed, the Court will grant Defendants' motion for judgment on the pleadings and will dismiss Plaintiff's claim for attorney's fees.

## C.    Vicarious Liability Against RBMNRR

Defendants next seek judgment on the pleadings dismissing Count I of the

Complaint alleging negligence and seeking to impose vicariously liability against Defendant

RBMNRR.[5] (Doc. 17 at 14-16). Plaintiff opposes Defendants' motion. To establish a cause

of action for negligence under Pennsylvania law, the plaintiff must plausibly allege (1) a duty

or obligation recognized by law requiring the defendant to abide by a standard of care to

protect against unreasonable risks, (2) the defendant failed to conform to that standard, (3)

a causal connection between the defendant's conduct and the resulting harm and (4) the

plaintiff suffered actual damage or loss. *R.W. v. Manzek*, 585 Pa. 335, 346, 888 A.2d 740,

746 (2005).

Under Pennsylvania law, the extent to which an employer can be held vicariously

liable for the negligent actions of an employee is "well-established and crystal clear." *R.A.*

*ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 699 (Pa. Super. 2000). Pennsylvania

law provides that "an employer is held vicariously liable for the negligent acts of his

employee which causes injuries to a third party, provided such acts were committed during

the course of and within the scope of the employment." *Id.* (citations omitted). An

employee is considered to be acting "within the scope of employment" for the purposes of

vicarious liability if:

> (1) It is of a kind and nature that the employee is employed to perform; (2) it occurs
> substantially within the authorized time and space limits; (3) it is actuated, at least

---

[5]    RBMNRR does not seek dismissal of Count II, alleging negligence against Defendant Fetterolf.

in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.
*Id.*

Accordingly, vicarious liability is "[n]ot limited to negligent acts, liability may also extend to acts committed by the employee which are intentional or criminal." *Nelson v. Loftus*, 2019 WL 175127, at *2 (E.D. Pa. Jan. 11, 2019) (citations omitted).

The Pennsylvania Supreme Court has "long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury." *Justice v. Lombardo*, 652 Pa. 588, 606, 208 A.3d 1057 (2019); *see also Adams v. U.S. Airways Grp., Inc.*, 978 F. Supp. 2d 485, 497 (E.D. Pa. 2013) ("Typically, the determination of whether an employee acted within the scope of his or her employment is a question for the jury."). "Two exceptions to this rule are when: (1) 'the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reasons; or (2) the employee commits assault upon another for personal reasons or in an outrageous manner.'" *Kaminski v. Mydatt Servs. Inc.*, 2012 WL 2089741, at *3 (W.D. Pa. June 8, 2012)) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998)).

Put differently, vicarious liability "may extend even to intentional or criminal acts committed by the employee; however, if the act is done for personal reasons, or in an outrageous manner, it is not done within the scope of employment." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. 2000); *see also Fitzgerald v. McCutcheon*,

270 Pa. Super. 102, 106, 410 A.2d 1270, 1272 (1979) ("Where, however, the employee

commits an act encompassing the use of force which is excessive and so dangerous as to

be totally without responsibility or reason, the employer is not responsible as a matter of

law."). "An act may be within the scope of employment even though the employer has

expressly forbidden it, and even if the act is intentionally violent and causes injury." *Fusco*

*v. Uber Tech.*, *Inc.*, 2018 WL 3618232, at *9 (E.D. Pa. July 27, 2018). "However, the rule

still holds that the act must have been actuated, at least in part, to serve the employer's

purposes." *Id.*

In this matter, RBMNRR claims it cannot be held vicariously liable for alleged

intentional/reckless/negligent conduct of its employee Defendant Fetterolf. Although it is a

close call, Plaintiff has alleged sufficient factual content which, if true, may plausibly warrant

imposition of vicarious liability on RBMNRR for the alleged intentional/reckless/negligent

conduct of Defendant Fetterolf. It is undisputed that the alleged sexual assault occurred on

the premises of RBMNRR and within the authorized time and space limits designated by

RBMNRR. Moreover, it may be true that Defendant Fetterolf's alleged

intentional/reckless/negligent sexual assault was actuated, at least in part, to serve her

employer's purposes and was of the kind and nature that she was employed to perform.

Plaintiff has alleged that Defendant Fetterolf was employed by RBMNRR as a Car Host,

which includes interacting, hugging, and taking pictures with guests while dressed as a

snowman character in costume. (Doc. 1, ¶¶ 15,18-20). At this stage of the proceedings the

22

Court cannot say that Defendant Fetterolf was acting outside the course and scope of her

employment such that vicarious liability may not attach to RBMNRR as a matter of law.

Discovery should reveal whether RBMNRR can be held vicariously liable and whether any

exception to vicarious liability applies. *Kaminski*, 2012 WL 2089741, at *3.   Accordingly,

Defendants' motion for judgment on the pleadings as to Count I will be denied.[6]

## D.    Negligent Hiring, Supervision, Training, Entrustment, and Retention

Defendants next seek dismissal of Count III, claiming that Plaintiff has failed to state

a plausible claim for negligent hiring, supervision, training, entrustment or retention against

Defendant RBMNRR.  "Plaintiff does not oppose Defendants' application as to the claims of

---

[6]      To the extent that Plaintiff also pleads negligent entrustment in Count I, the Court will address this claim below when discussing Count III.  Although neither Count is entitled "Negligent Entrustment," both Count I and Count III contain the exact same allegations regarding negligent entrustment and the Court believes it best to address this claim in Count III along with the negligent supervision and negligent training claims.  (Doc. 1, ¶ 46) ("Upon Information and belief, the Railway Defendants, negligently and/or reckless entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants' train(s) as a Car Host."); (*Id.*, ¶ 70) ("Upon Information and belief, the Railway Defendants, negligently and/or reckless entrusted Defendant Fetterolf to perform her job duties and responsibilities on Defendants' train(s) as a Car Host.").  Moreover, in its brief in the section entitled "Count III Should Not Be Dismissed" Plaintiff states that "Plaintiff's Complaint is sufficiently specific to her claims based on negligent training, entrustment and supervision." (Doc. 20-1 at 20).

In addition, to the extent Plaintiff attempts to assert a direct corporate negligence claim against the Defendants in Count I, such claim will be dismissed because Plaintiff alleges no facts to support this type of claim and direct corporate negligence claims do not extend to non-healthcare related corporate entities such as RBMNRR under Pennsylvania law. *See Goodfellow by Goodfellow v. Shohola, Inc.*, 2018 WL 3995696, at *5 (M.D. Pa. Aug. 21, 2018) ("Moreover, the court finds merit to the contention that the Camp is not the type of entity that can be held liable under the doctrine of corporate liability under Pennsylvania law and, that this claim against the Camp fails as a matter of law."); *see also Altomare v. United States*, 2025 WL 553356, at *5 (E.D. Pa. Feb. 18, 2025) (discussing corporate negligence claim, noting "Pennsylvania recognizes that hospitals and similar comprehensive healthcare centers owe four broad duties to their patients."); *Welsh v. Bulger*, 548 Pa. 504, 698 A.2d 581, 595 (1997) ("A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual **hospital** employees.") (emphasis added).

negligent hiring and retention." (Doc. 20-1 at 21). Therefore, those claims will be dismissed and the only remaining claims in Count III are claims for negligent supervision, entrustment, and training.

"Negligent screening, hiring, training, supervision, or retaining holds an employer directly liable for its own negligent failure to protect a plaintiff from an employee that it knows, or has reason to known, is likely to cause injury." *Adams*, 978 F. Supp. 2d at 496 (citing Restatement (Second) of Torts § 317); *see also Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418, 419-20 (1968) (acknowledging that Pennsylvania adopted the Restatement (Second) § 317 approach). Unlike the vicarious liability claims alleged in Count I, the claims alleged in Count III "differ from claims for vicarious liability because they allow plaintiffs to recover for harms that occur when employees act outside the scope of their employment." *Adams*, 978 F. Supp. 2d at 496; *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 489 (3d Cir. 2013) (unlike vicarious liability/respondeat superior, "[a] claim for negligent supervision provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent doctrine of respondeat superior because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business.").

"To state a direct claim, the plaintiff must allege '(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer

knows or has reason to know of the necessity and ability to control this employee.'" *Adams*,

978 F. Supp. 2d at 496 (quoting *Belmont*, 708 F.3d at 487-88. "Under this standard, the

employee's prior behavior must put the employer on notice that it must control the

employee." *Id.* (citing *Heller v. Patwill Homes, Inc.*, 713 A.2d 105, 108 (Pa. Super. 1998));

*see also Brezenski*, 755 A.2d at 39-40 ("It has long been the law in this Commonwealth that

an employer may be liable in negligence if it knew or should have known that an employee

was dangerous, careless or incompetent and such employment might create a situation

where the employee's conduct would harm a third person.") (citing *Dempsey*, 431 Pa. 562);

*McClain v. RBS Citizens Bank, N.A.*, 57 F. Supp. 3d. 438, 442 (E.D. Pa. 2014) ("To

establish liability, the employer must have known or, in the exercise of appropriate care,

should have known that an employee had a propensity to engage in conduct for which the

employee could be held liable.").

### Negligent Supervision

The Court has already determined that Defendant Fetterolf's alleged sexual assault

could plausibly be considered an act within the course and scope of her employment,

depending on a number of factors. However, Plaintiff may still recover directly against

Defendant RBMNRR to the extent that Defendant Fetterolf was acting outside the scope of

her employment. *See Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire &

Assoc., LLC*, 2010 WL 5122003, at *5 (E.D. Pa. Dec. 14, 2010) (noting that "even if a

negligent supervision claim required that the relevant employee have acted outside the

scope of employment, plaintiffs' negligent supervision claim can stand as an alternative basis for liability").

"To prove a negligent supervision claim, a plaintiff must show an injury caused by '(1) a failure to exercise to ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has to reason to know of the necessity and ability to control the employee.'" *Marfia v. Gettysburg Area Sch. Dist.*, 2025 WL 1688922, at *14 (M.D. Pa. June 16, 2025) (quoting *Belmont v. MB Inc. Partners*, *Inc.*, 708 F.3d 470, 487-88 (3d Cir. 2013)). "Negligent supervision requires the four elements of common law negligence, *i.e.*, duty, breach, causation, and damages." *Belmont*, 708 F.3d at 488. "It is specifically predicated on two duties of an employer:  the duty to reasonably monitor and control the activities of an employee, and the duty to abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party." *Id.* (citing *Hutchinson v. Luddy*, 560 Pa. 51, 742 A.2d 1052, 1059-60 (1999)). "An employer is liable for negligent supervision when it negligently supervises an activity, employs an improper person in work that risks harm to others or permits an employee to commit tortious conduct using instrumentalities in the employer's control." *Dragone v. Pew*, 621 F. Supp. 3d. 561, 566 (E.D. Pa. 2022).

"Plaintiffs must further satisfy two foreseeability requirements.  First, they must show that the employer 'knew or should have known of the necessity for exercising control of its

employee." *Smith v. RB Distr., Inc.*, 498 F. Supp. 3d. 645, 667 (E.D. Pa 2022) (quoting *Belmont*, 708 F.3d at 491). "This requirement arises from § 317 of the Restatement (Second) of Torts." *Id.* "Second, 'the harm that the improperly supervised employee caused to the third party must also have been reasonably foreseeable.'" *Id.* (quoting *Belmont*, 708 F.3d at 491). "This requirement arises from '§ 213 of the Restatement (Second) of Agency, which requires that all of the elements of the tort of negligence exist in order for liability for negligence supervision to attach.'" *Id.* (quoting *Belmont*, 708 F.3d at 491). "An employer knows, or should have known, of the need to control an employee if the employer knows that the employee has dangerous propensities that might cause harm to third parties." *Belmont*, 708 F.3d at 491. "A harm is foreseeable if it is part of a general type of injury that has a reasonable likelihood of occurring." *Id.* That is, Plaintiff may recover for negligent supervision if RBMNRR "knew or had to reason to know" of any alleged prior bad acts by Defendant Fetterolf and the "propensity and the necessity to control" her, "in addition to the opportunity and ability to do so in order to prevent h[er] from intentionally harming others."[7] *Costa*, 708 A.2d at 496.

---

[7]    "Generally, Pennsylvania follows the approach of the Restatement (Second) of Torts in cases that allege negligent retention or supervision of employees." *Hena v. Target Corp.*, 2020 WL 6321581, at *2 (E.D. Pa. Oct. 28, 2020). "Section 317 of the Restatement (Second) of Torts, creates an exception to the general rule that a person has no duty to control the acts of third parties. It provides that when an employee is on the employer's premises and the employer knows or should known that he can and should control the actions of the employee, the employer must exercise reasonable care to control his employees while acting outside the scope of this employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them." *Id.* Section 213 of the Restatement (Second) of Agency also applies to Plaintiff's claim alleging negligent supervision and "does not require that employees act outside the scope of their employment, and it contemplates potentially concurrent liability for employers under both § 213 and respondeat superior." *Id.* (internal citation and quotation marks omitted).

In this matter, Plaintiff negligent supervision claim must be dismissed because Plaintiff fails to "allege a specific instance of past misconduct on the part of the employee that 'would have put a reasonable employee on notice of the employee's propensity to injure others." *Doe A.F. v. Lyft, Inc.*, 2024 WL 3497886, at *3 (E.D. Pa. July 19, 2024) (internal citation and quotation marks omitted); *see also Nelson,* 2019 WL 175127, at *5 ("Notably, the courts now emphasize the importance of the defendant's employer's knowledge of prior conduct by the employee.") (internal citation and quotation marks omitted).  Stated differently, Plaintiff has not pleaded any plausible non-conclusory factual allegations that would lead to the inference that RBMNRR was aware or should have been aware that Defendant Fetterolf was incompetent or incapable of performing the job or otherwise was predisposed to sexual assault or violence.  (Doc. 1, ¶¶ 71(a), 71(b), 76).   Plaintiff's Complaint fails to allege any specific prior conduct that would make RBMNRR aware, or that RBMNRR should have been aware, of any alleged predisposition to sexual assault and/or violence by Defendant Fetterolf.  (*Id.*).

Plaintiff's negligent supervision claim further fails because she has not alleged sufficient factual content to plausibly establish that the harm occasioned upon Plaintiff was

---

"[A]n employer may be liable in negligence if it knew or should have known that an employee was dangerous, careless or incompetent and such employment might create a situation where the employee's conduct would harm a third person." *Brezenski*, 755 A.2d at 39-40.  "An act cannot be negligent unless the harm is foreseeable to the class to which the complaining party belongs."  *Id.* at 40.  Thus, "[u]nlike Restatement (Second) of Torts § 317, Restatement (Second) of Agency § 213 does not require that employees act outside the scope of their employment, and it contemplates potentially concurrent liability for employers under both § 213 and respondeat superior."  *Bayview*, 2010 WL 5122003, at *6.

reasonably foreseeable to RBMNRR. Plaintiff has not plausibly alleged any prior bad acts by Defendant Fetterolf that would have put Defendant RBMNRR on notice of Fetterolf's alleged propensity for sexual assault and/or violence. (Doc. 1, ¶¶ 71(a), 71(b), 76); *see Henry v. Marcelin*, 2024 WL 4293055, at \*4 (E.D. Pa. Sept. 25, 2024) (dismissing claim for negligent supervision where plaintiff "fails to identify any past misconduct that would put a reasonable employer on notice of an employee's propensity for dangerous activity"); *Doe A.F.*, 2024 WL 3497886, at \*4 ("The Amended Complaint fails to allege past misconduct on the part of Brown and does not otherwise allege facts suggesting that Lyft knew or should have known that Brown had violent tendencies. The Court therefore grants Lyft's motion as to the negligent supervision claim."); *Fusco*, 2018 WL 3618232, at \*5 (dismissing claim for negligent supervision, where "the plaintiff fails to allege a specific instance of past misconduct"); *Costa*, 708 A.2d at 496 (no liability for negligent supervision where assault occurred on the hospital premises during work hours and "conspicuously absent from the evidence is any indication of [individual defendant's] dangerous or violent propensities"), *but see G.B. v. Jade Nails Hair Spa*, 2021 WL 4149146, at \*3 (E.D. Pa. Sept. 13, 2021) (plaintiff stated claim for negligent supervision where (1) "the actions giving rise to this case" occurred at the employer's premises; (2) the defendant "acted outside the scope of his employment," and (3) Nhin's conduct was reasonably foreseeable, in the plaintiff alleged that Nhin "***had previously been arrested for similar sexual crimes***" occurring on the defendant's premises) (emphasis added).

Although the alleged sexual assault occurred during work hours on the RBMNRR premises while Defendant Fetterolf was employed as a Car Host and wearing a snowman costume, Plaintiff has not plausibly alleged, other than in wholly conclusory fashion, that Defendant Fetterolf's alleged sexual assault was reasonably foreseeable to RBMNRR or that RBMNRR knew, or should have known, of the need to exercise control over Defendant Fetterolf due to her propensity for sexual assault/violence.  Indeed, Plaintiff only alleges such facts in conclusory form, upon information and belief, and/or further states the certain allegations may have support after discovery.  There are no specific allegations factual allegations that Defendant Fetterolf committed any prior bad acts, suggesting a propensity for violence/sexual assault, or that her employer was aware, or should have been aware, of her alleged propensity for sexual assault.  (Doc. 1, ¶¶ 71(a), 71(b), 76).  These barebones, conclusory, generalized allegations with respect toDefendant Fetterolf are simply not enough to survive a motion for judgment on the pleadings.  *See Matos v. Uber Tech., Inc.*, 2024 WL 3238127, at *7 n.15 (E.D. Pa. June 28, 2024) ("But the Court cannot permit Plaintiff's claims to proceed based solely on his unsupported belief that discovery *may* reveal the facts necessary for him to state a plausible cause of action.") (emphasis supplied) (collecting cases).

Accordingly, Plaintiff has not alleged sufficient plausible factual content to demonstrate that Defendant Fetterolf's alleged sexual assault of Plaintiff while wearing a snowman costume and entertaining passengers on RBMNRR's Santa Train was reasonably

foreseeable to her employer. Nor has Plaintiff alleged sufficient plausible factual content demonstrating that it was reasonably foreseeable to RBMNRR that Defendant Fetterolf would allegedly sexually assault a train passenger based on her unalleged prior propensities for bad acts. Therefore, the Court will grant Defendants' motion for judgment of the pleadings and will dismiss Plaintiff's claim alleging negligent supervision. *See Matos*, 2024 WL 3238127, at *8 (dismissing negligent supervision claim, where "there is no allegation in the Complaint that Holloway committed any sort of misconduct before he assaulted Plaintiff nor does the Complaint contain any other facts suggesting Defendants knew or should have known of a need to supervise him."); *see also McNeil v. Wells Fargo Bank, N.A.*, 2021 WL 632640, at *8 (E.D. Pa. Feb. 18, 2021) (dismissing negligent supervision claim where the plaintiff "fails to allege foreseeability; she does not allege Wells Fargo knew or should have known its employees had propensities to cause harm"); *Nelson*, 2019 WL 175127, at *8 (dismissing negligent supervision claim where plaintiff "fails to provide evidence of Mr. Loftus' propensity for violent behavior").

### Negligent Entrustment

Similarly, the Court will grant Defendants' motion for judgment on pleadings as to Plaintiff's negligent entrustment claim alleged in Count III because Plaintiff fails to allege any specific past conduct plausibly suggesting that RBMNRR knew, or should have known, of Defendant Fetterolf's claimed but unalleged alleged dangerous propensities. "Negligent entrustment is defined as '[t]he act of leaving a dangerous article (such as a gun or car) with

a person who the lender knows or, should know, is likely to use it in an unreasonably risky

manner.'" *Estate of Arrington v. Michael*, 738 F.3d 599, 606 n.3 (3d Cir. 2013) (quoting

BLACK'S LAW DICTIONARY 1135 (9th ed. 2009)).  "An employer commits negligent

entrustment when it allows an employee to use an instrumentality or engage in an activity

under its control if the employer knows or should know that the employee likely will do so in

a manner that creates unreasonable risk of harm to others."  *Dragone*, 621 F. Supp. 3d. at

566 (citing *Brezenski* 755 A.2d at 42.  Put differently:

> It is negligence to permit a third person to use a thing or to engage in an activity which
> is under the control of the actor, if the actor knows or should known that such person
> intends or is likely to use the thing or to conduct himself in the activity in such a manner
> as to create an unreasonable risk of harm to others.
>
> …  However, our cases do require that entrustee be causally negligent before the
> entrustor may be held liable through negligent entrustment.

*Phillips v. Lock*, 86 A.3d 906, 913 (Pa. Super. 2014); *see also* Restatement (Second) of

Torts § 308.  Therefore, under the theory of negligent entrustment, "liability is imposed upon

a defendant because of his or her own actions in relation to the instrumentality or activity

under his or her control.  The entrustor's liability is not dependent on, or derivative of, or

imputed from the entrustee's actual liability for damages." *Spencer v. Johnson*, 249 A.3d

529, 553 (Pa. Super. 2021) (internal citation and quotation marks omitted).

Here, there is no allegations that Defendant negligently entrusted the train or any

other dangerous instrumentality to Plaintiff.  Moreover, like the negligent supervision claim,

Plaintiff has alleged insufficient plausible factual content raising the inference that RBMNRR

knew or should have known of Defendant Fetterolf's claimed propensity for sexual assault and/or violence that would result in her snowman character in full costume allegedly sexual assaulting the Plaintiff.  (Doc. 1, ¶¶ 71(a), 71(b), 76); *see Blackson v. Matthews*, 2025 WL 818163, at *2 (E.D. Pa. Mar. 13, 2025) (dismissing negligent entrustment claim where "Plaintiff here provided no facts to suggest that Revolution and Slaven knew or should have known that Matthews was going to use the semi-trailer in such a way to create unreasonable risk of harm to Plaintiff."); *Frndak v. Pennsylvania State Police*, 2022 WL 4608695, at *3 (W.D. Pa. Sept. 30, 2022) ("Taking these allegations as true, they do not plead sufficient knowledge to state a claim for negligent entrustment in this case.  As an initial matter, the paragraphs of the pleadings that address Liberty's knowledge consist largely of conclusory statements that parrot the elements of the tort at issue.  Moreover, even assuming that Liberty knew or should have known of the existence of the charges at issue, the Third Amended Complaint does not specify the underlying conduct that led to those charges or state any facts suggesting that Liberty was aware of that conduct."). Because Plaintiff failed to plausibly allege facts suggesting that RBMNRR knew, or should have known, that Defendant Fetterolf's portrayal of a holiday character on the Santa Train created an unreasonable risk of harm to plaintiffs, Plaintiff's negligent entrustment claim must necessarily fail.

In addition, no party has provided the Court, and the Court was unable to find any negligent entrustment case based on similar facts as those alleged in the Complaint.

Indeed, most, if not all, of the negligent entrustment cases concern the use of vehicle or otherwise address a dangerous activity or instrumentality. *See Uslu v. Evans*, 2025 WL 378919, at *4 (E.D. Pa. Jan. 31, 2025) (dismissing negligent entrustment claim where the plaintiff failed to "identify evidence in support of their allegations that the accident occurred due to the negligent entrustment of the ***vehicle***.") (emphasis added); *Allen v. Foxway Transp. Inc.*, 2024 WL 388133, at 87 (M.D. Pa. Feb. 1, 2024) (dismissing negligent entrustment claim based on children's death by ***tractor trailer*** during shipment); *Spencer*, 249 A.3d at 553 ("Likewise, the jury could have also concluded that PJB negligent entrusted ***the vehicle*** to Tina when it failed to conduct a background check on Tina and failed to monitor her vehicle usage. Moreover, the jury could have inferred that because of these failures, PJB should have known that Tina intended to use the car in such a manner as to create an unreasonable risk of harm to others, *i.e.*, allowing her non-licensed husband to drive the company car, the only car that was in the couple's possessions.") (emphasis added); *Fakes v. Terry*, 2018 WL 1382513, at *5 (W.D. Pa. Mar. 19, 2018) (dismissing negligent entrustment claim based on truck driver's inexperience, noting "Plaintiffs contend that simply because Terry was a rookie, Carolina Cargo can be held liable; however, Plaintiffs point to no case law that imposes such strict liability on ***trucking*** companies for a new driver's first run. In fact, Plaintiffs have offered no case law promoting a heightened standard for employers of new employees in any industry.") (emphasis added).

Plaintiff has failed to allege any similar plausible factual material to support her claim for negligent entrustment. To the extent that Plaintiff claims that RBMNRR negligently entrusted the snowman costume to Defendant Fetterolf as a "rookie employee," that argument is wholly without case law support and lacks merit. Accordingly, the Court will grant Defendants' motion for judgment on the pleadings and will dismiss Count III alleging negligent entrustment.

### Negligent Training

Defendants next seek dismissal of Plaintiff's claim for negligent training, though they fail to address this claim and further fail to offer arguments or case law in support of dismissal Plaintiff's negligent training claim. (Doc. 17 at 16-20); (Doc 20-1 at 20). "Pennsylvania law differs between a claim for negligent training and a claim for negligent supervision." *Fakes*, 2018 WL 1382513, at *4. To prove negligent training, a plaintiff must show that the Defendants "(1) had a duty to train their employees; (2) breached that duty; and (3) the breach of that duty caused Plaintiff's harm." *Marfia*, 2025 WL 1688922, at *14 (internal citation and quotation marks omitted). Notably absent from the elements of a negligent training claim is a requirement that the Plaintiff allege specific instances of past misconduct, unlike claims for negligent supervision and entrustment. *See Kaminski*, 2012 WL 2089741, at *4 (W.D. Pa. June 8, 2012) ("Corporate Defendants cite no cases, and this Court has not found any cases, which promulgates a standard for negligent training different than the normal negligence standard."); *Matos*, 2024 WL 3238127, at *7 ("Pennsylvania

courts have not outlined a specific framework for analyzing a negligent training claim, separate from the general negligence framework of duty, breach, causation, damages.") (internal citation and quotation marks omitted).

Initially, the Court notes that Plaintiff has alleged that Defendant Fetterolf was a new hire specifically employed to interact with guests on RBMNRR's Santa Train while dressed in a snowman costume and further alleges that Defendant Fetterolf did not receive any training from RBMNRR. (Doc. 1, ¶¶ 18-20, 49-51, 52, 68-69, 71(b), 72, 77, 79-83). Plaintiff has alleged sufficient plausible factual content to support a claim for negligent training at this stage of the proceedings. *See Milesco v. Norfolk S. Corp.*, 2010 WL 11714013, at *11 (M.D. Pa. Aug. 18, 2010) (denying motion to dismiss claim alleging negligent training); *see also Klaminski*, 2012 WL 2089741, at *4-5 (same).

Unlike the rideshare companies in *Matos* and *Doe A.F.*, the Court cannot say, as a matter of law, that RBMNRR had no duty to train Defendant Fetterolf on the proper interactions with the customers and the need to avoid what could be considered inappropriate touching while dressed in a snowman costume. *See Doe A.F.*, 2024 WL 3497886, at *3 n. 5 ("And as to the negligent training claim, Plaintiff has not alleged facts suggesting that Lyft had a duty to train Brown on something as elementary as not sexually assaulting passengers, what additional training should have been required, or that training on something this basic would have prevented Brown's attack on Plaintiff."); *Matos*, 2024 WL 3238127, at *7 (same). Plaintiff has alleged that Defendant Fetterolf was a new hire on

her first day portraying a Christmas character who was specifically hired to interact with passengers aboard the Santa Train and further has alleged harm in the form of a sexual assault allegedly caused by RBMNRR's lack of training of Defendant Fetterolf on the proper interactions with customers. (Doc. 1, ¶¶ 18-20, 49-51, 52, 68-69, 71(b), 72, 77, 79-83). Although Plaintiff's allegations are somewhat vague and lacking detail, the Court cannot say, as a matter of law, that Plaintiff fails to plausibly allege a claim for negligent training. Accordingly, the Court will deny Defendants' motion for judgment on pleadings as to the claim for negligent training.

### E.    Common Law Assault Under Pennsylvania Law

Defendants also seek dismissal of Count IV alleging common law assault against Defendant Fetterolf, claiming that Plaintiff has failed to allege a plausible claim for common law assault.[8]  More specifically, Defendant claims that Plaintiff's assault claim must be dismissed, because "she does not allege that she was aware of Ms. Fetterolf's intent, before the complained-of touching, such that she could have formed an apprehension of an imminent battery." (Doc. 17 at 20).

Under Pennsylvania law, assault has been defined as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Regan v. Upper Darby Twp.*, 363 Fed. App'x

---

[8]    Defendants do not seek dismissal of Plaintiff's battery claim at this stage of the proceedings.  (Doc. 17 at 20 n.1).

917, 921 (3d Cir. 2010); *see also Sides v. Cleland*, 436 Pa. Super. 618, 626, 648 A.2d 793

(1994) ("An assault occurs when an actor intends to cause an imminent apprehension of a

harmful or offensive bodily contact.") (citing Restatement (Second) of Torts § 21).  "The

plaintiff's apprehension must be reasonable, and the actor must take some affirmative

action in an attempt to carry out the threatened harm."  *Nayak v. Herbison*, 2015 WL

13738992, at *6 (M.D. Pa. June 4, 2015) (citing *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d

216 (1960)).

The Court will not dismiss Plaintiff's assault claim at this stage of the proceedings.  If

Plaintiff only alleged a single incident of battery, the Court would be inclined to agree with

Defendants that "Plaintiff has failed to plausibly show that, prior to the occurrence of the

contact, she was aware of, or perceived, Ms. Fetterolf as intending to cause any harmful or

offensive contact with her."  (Doc. 17 at 21-22).  But the Complaint alleges several incidents

of alleged battery/groping of Plaintiff's breasts such that it is plausible that Plaintiff faced an

reasonable and imminent apprehension of battery.  (Doc. 1, ¶ 20) ("Defendant Fetterolf

grabbed Plaintiff's right breast and squeezed same hard, ***several times***.") (emphasis

added).  Accordingly, Defendants' motion for judgment on the pleadings as to Count IV

alleging assault will be denied.

### F.    Intentional Infliction of Emotional Distress

Finally, Defendants seek dismissal of Count V, claiming that Plaintiff has failed to put

forward a plausible claim for intentional infliction of emotional distress ("IIED") against

RBMNRR or Defendant Fetterolf. (Doc. 17 at 22-23). A claim for IIED "requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). A "plaintiff must demonstrate that the defendant's conduct was 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (quoting *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005)). "Only the most egregious behavior will clear that high bar." *Salaam v. Trump*, 777 F. Supp. 3d. 414, 430 (E.D. Pa. 2025).

Put differently, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to other results from it, for such bodily harm." *Hoffmann v. Mem'l Osteopathic Hosp.*, 342 Pa. Super. 375, 492 A.2d 1382, 1386 (1985) (quoting Restatement (Second) of Torts § 46(1)). "It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery" for IIED. *Doe v. Schneider*, 667 F. Supp. 2d 524, 533 (E.D. Pa. 2009) (citing *Reimer v. Tien*, 356 Pa. Super. 192, 514 A.2d 566, 569 (1986)); *see also SJ Abstract v. Old Republic Nat'l Title Ins. Co.*, 2021 WL 4847803, at *5 (E.D. Pa. Oct. 14, 2021) ("Whether the conduct alleged could reasonably be found to be sufficiently extreme and outrageous is a question of law for the court."). "This claim also requires an

allegation of some type of physical injury, harm, or illness related to the distress."

*McCullough v. Wellspan York Hosp.*, 2021 WL 711476, at *4 (M.D. Pa. Feb. 5, 2021), *report & recommendation adopted*, 2021 WL 694800 (M.D. Pa. Feb. 23, 2021).

"The burden of demonstrating outrageous conduct is substantial; plaintiffs must show that the actions have been 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to regarded as atrocious, and utterly intolerable in a civilized community.'" *Smith*, 498 F. Supp. 3d. at 666 (E.D. Pa 2022) (quoting Restatement (Second) of Torts § 46 cmt. d.). "The Pennsylvania Supreme Court has also noted that the availability of recovery under Section 46 of the Second Restatement is 'highly circumscribed.'" *Id.* (quoting *Kazatsky v. King David Mem'l Park*, *Inc.*, 515 Pa. 183, 198, 527 A.2d 988 (1987)). As the Third Circuit has explained, "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." *Cheney v. Daily News, L.P.*, 654 Fed. App'x 578, 584 (3d Cir. 2016) (citing *Salerno v. Philadelphia Newspapers*, *Inc.*, 546 A.2d 1168, 1172 (Pa. Super. 1988) (collecting cases)). "It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy v. Angelone*, 554 Pa. 134, 151, 720 A.2d 745 (1998) (quoting Restatement (Second) of Torts § 46, cmt. d) Accordingly,

"[c]ases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Id.* (collecting cases).

In the Complaint, Plaintiff alleges the following facts regarding the alleged intentional/reckless groping of her breast:   Defendant Fetterolf was extremely animated in playing the "Snowman" character and she was hugging many of the passengers along her travel down the train aisle.  (Doc. 1, ¶ 18).  Some of the passengers were taking "selfies" with the "Snowman" (Defendant Fetterolf).  (*Id.*).  When Defendant Fetterolf made her way to Plaintiff's seat/location, she placed her left hand around Plaintiff's back and rested same upon Plaintiff's left shoulder, as if to give her a hug, like she had been previously doing with other passengers.  (*Id.*, ¶ 19).  However, with her right hand, Defendant Fetterolf grabbed Plaintiff's right breast and squeezed same hard, several times.  (*Id.*, ¶ 20).  This was done in front of witnesses, including one of Plaintiff's family members, who was sitting directly across from Plaintiff.  (*Id.*, ¶ 21).  Plaintiff was visibly shocked, angry, upset, and traumatized.  (*Id.*, ¶ 22).  This shocking and traumatizing event, and the aftermath, took place in front of strangers, including children that Plaintiff did not know, as well as her grandchildren.  (*Id.*, ¶ 23).  Further, Defendant's Fetterolf's unwelcome physical touching (firm squeezes) caused physical pain and injury to Plaintiff.  (*Id.*, ¶ 24).  "Defendant Fetterolf's unauthorized, unwarranted, unlawful and offensive touching of Plaintiff was extreme and outrageous and was performed in deliberate disregard of the high degree of

probability that emotional distress of Plaintiff would follow." (*Id.*, ¶ 93). "As a direct and

proximate result of the Defendant Fetterolf's intentional wrongful acts and omissions,

Plaintiff suffered serious injuries, including substantial emotional and mental anguish, and

psychological injury, causing her pain and suffering, direct consequential economic

damages, and other personal and property damages." (*Id.*, ¶ 94).

The Court will dismiss Count V alleging IIED against RBMNRR and Defendant

Fetterolf and enter judgment in their favor. The facts alleged in the Complaint simply do not

meet the very high threshold required to recover for IIED under Pennsylvania law.

Defendant Fetterolf's alleged conduct was not sufficiently extreme and outrageous as to

warrant recovery for IIED against her or RBMNRR. *See, e.g., Hummel v. JH Cornelia, LLC*,

2023 WL 3067048, at *3 (E.D. Pa. Apr. 25, 2023) (dismissing IIED claim where male plaintiff

alleged the male defendant "made repeated attempts to touch Plaintiff's penis and remove

his penis from his pants" and was successful, stating that, "Plaintiff seemingly relies solely

upon Plaintiff's one alleged sexual encounter with Phillips to establish his intentional

infliction of emotional distress claim. While Plaintiff pleads that the sexual conduct on this

one occasion was unwanted and unconsented, Plaintiff fails to allege any facts that Phillips'

behavior was 'so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious or utterly intolerable in a

civilized society.'") (quoting *McGreevy*, 413 F.3d at 371); *Rhoads v. Althom, Inc.*, 2023 WL

2578257, at *8 (M.D. Pa. Mar. 20, 2023) ("Upon careful consideration of the parties'

contentions and the allegations of Plaintiff's complaint, the Court is constrained to agree

with Defendants that Plaintiff has failed to plausibly allege an IIED claim under Pennsylvania

law.  Clark's behavior, assuming the truth of Plaintiff's allegations, was intentional,

malicious, and likely criminal.  An IIED claim, however, requires more."); *McKay v. Krimmel*,

2020 WL 1479133, at *5 (E.D. Pa. Mar. 25, 2005) (no claim for IIED where plaintiff "alleges

that having his genital area touched and searched caused him" severe mental anguish);

*Nayak v. Voith Turbo, Inc.*, 2016 WL 860664, at *4 (M.D. Pa. Mar. 7, 2016) (dismissing IIED

claim where "[t]he conduct alleged in Plaintiff's complaint, even regarded in the light most

favorable to Plaintiff, does not rise to the requisite level of outrageousness to support an

IIED claim under Pennsylvania law."); *Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d

422, 439 (E.D. Pa. 2010) (dismissing IIED claim where plaintiff alleged defendant frequently

stared at her breasts, suggestively asked plaintiff to bend over, and held a knife to plaintiff's

breast); *Swanson v. Northwestern Human Servs., Inc.*, 2006 WL 3354145, at *6 (E.D. Pa.

Nov. 30, 2006) (dismissing claim alleging IIED, "this Court rejects Plaintiff's IIED claim

because Dr. Rafsky's alleged conduct, i.e., grabbing of Plaintiff's buttocks on one occasion

and requests for dates, while unacceptable, do not rise to the level of outrageous for an

IIED claim."); *Dee v. Marriott Int'l, Inc.*, 1999 WL 975125, at *6 (E.D. Pa. Oct. 6, 1999)

("Sexual harassment is also unlikely to lead to valid claim for intentional infliction of

emotional distress absent retaliation for rejected sexual advances."); *Borton v. Unisys Corp.*,

1991 WL 915, at *7 (E.D. Pa. Jan. 4, 1991) ("Also, as a general rule, sexual harassment

alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress."); *Hoy*, 554 Pa. at 153 ("While we are well aware that sexual harassment is highly offensive and unacceptable conduct, the conduct exhibited by Appellees, while unacceptable, was not so extremely outrageous . . . that would allow for recovery under this most limited of torts."). Accordingly, Count V must be dismissed because the conduct alleged in the Complaint is not sufficiently extreme and outrageous to warrant recovery for IIED. Judgment will be entered in favor of Defendants on Count V.

In sum, the Court will grant in part and deny in part Defendants' motion for judgment on the pleadings. The Court will dismiss Count III in part and enter judgment in favor of the Defendants on the claims alleging negligent hiring, negligent supervision, negligent retention, and negligent entrustment. The negligent training claim alleged in Count III will proceed to discovery. The Court will further grant Defendants' motion and will dismiss Count V and enter judgment in favor of Defendants on Plaintiff's IIED claim. Although Plaintiff did not request leave to amend in her opposition papers or submit a proposed Amended Complaint, Plaintiff may file a motion for leave to amend along with a proposed Amended Complaint, Fed. R. Civ. P. 15(a)(2), and further may file a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or seek relief from judgment pursuant to Fed. R. Civ. P. 60(b). *See Wolfington v. Reconstructive Orthopaedic Assoc. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019) ("However, when a party seeks leave to amend a complaint

after judgment has been entered, it must also move to set aside the judgment pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), because the complaint cannot be amended while the judgment stands.  Where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors.  Nonetheless, in non-civil right cases, district courts have no obligation to offer leave to amend before dismissing a complaint unless the plaintiff properly requests it.") (internal citation and quotation marks omitted).

## V.    CONCLUSION

For the foregoing reasons, Defendants' partial motion for judgment on the pleadings will be granted in part and denied in part.  A separate Order follows.

Robert D. Mariani
United States District Judge